IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 06-106S |
| | ) | |
| DERRICK ISOM | ) | |

GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION
TO WITHDRAW PLEA OF GUILTY AND VACATE SENTENCING DATE

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, Assistant United States Attorney, and objects to the Defendant's Motion To Withdraw Plea Of Guilty And Vacate Sentencing Date for those reasons stated in the accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
kenneth.madden@usdoj.gov
R. I. Bar # 1680

CERTIFICATION

I hereby certify that on the 7th day of December, 2007, I electronically filed and served the Within Government's Objection To Defendant's Motion To Withdraw Plea Of Guilty And Vacate Sentencing Date to:

Patrick J. Sullivan, Esq.
Law Offices
505 Tiogue Avenue, Suite 3
Coventry, RI 02816

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
kenneth.madden@usdoj.gov
R. I. Bar # 1680

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 06-106S |
| | ) | |
| DERRICK ISOM | ) | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
OBJECTION TO DEFENDANT'S MOTION TO WITHDRAW
PLEA OF GUILTY AND VACATE SENTENCING DATE

1. Introduction

Defendant Derrick Isom (Defendant or Isom) files a motion asking the Court to allow him to withdraw his plea of guilty and vacate the sentencing date. Isom lists three grounds: 1) the government failed to comply with its discovery obligations; 2) new evidence discovered subsequent to the entry of his plea establishes that Isom's plea was not knowing, voluntary or intelligent; and 3) the testimony of Providence Police Sergeant Scott Partridge at the Franks[1] hearing for Isom's co-conspirator and co-defendant Khalid Mason and the discovery by Sergeant Partridge of additional police reports at his home was so outrageous so as to deprive Isom of his due process rights.

For those reasons which follow, Isom has failed to make a case, and his motion should be denied.

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

2. Travel

While not every detail in the matter of United States v. Isom and Mason is listed below, to assist the Court, the government summarizes those events pertinent to Isom's case.

Isom and Mason were indicted on October 4, 2006. Isom was arraigned on October 10, 2006, and the Federal Defender was appointed to represent him. Trial was initially set by the Court for November 21, 2006. That date was subsequently changed by the Court to December 5, 2006.

By letter dated October 23, 2006 and again on November 8, 2006, the government provided defense counsel with discovery materials. The discovery materials included a proposed plea agreement. Isom and his counsel signed a plea agreement on November 30, 2006.[2] On December 1, 2006, pursuant to 21 U.S.C. § 851, the government filed a sentencing enhancement Information alleging only one of Isom's three prior felony drug convictions. The filing of the Information raised Isom's sentencing exposure from ten years to life imprisonment to twenty years to life imprisonment. The plea agreement was filed on December 4, 2006.

A change of plea was scheduled for December 13, 2006. The matter was continued to December 15, 2006. On that date, Isom entered a plea of guilty to both counts in the Indictment. The Court accepted the plea. The Court set sentencing for March 2, 2007. On January 25, 2007, that date was further continued by the Court to March 16, 2007.

On February 7, 2007, the Probation Office issued Isom's Presentence Investigation Report (PSR). Included in the PSR is Isom's acceptance of responsibility letter, signed by him,

---

[2] The plea agreement is this matter is sealed. The government will not mention the terms of the agreement unless allowed by the Court.

in which he states "I fully and freely acknowledge that I conspired with Khalid Mason to possess cocaine base with the intent to distribute on January 16, 2004."

On February 21, 2007, Isom moved to continue the sentencing for sixty days, stating that additional time was needed to review mitigating issues that would assist the defendant at sentencing. Isom also moved for an extension of time in which to file objections to the PSR. On March 9, 2007, Isom filed an objection to his PSR. The essence of the objection was that the details of the previous offenses of which Isom had been convicted or charged should be stricken from the PSR and not be considered by the Court in crafting a sentence.

On May 1, 2007, Isom again moved to continue the sentencing date for an additional sixty days on grounds that the government and defense needed time to complete their sentencing investigation. The Court continued sentencing to July 20, 2007. On May 9, 2007, the Federal Defender moved to withdraw her appearance. On May 24, 2007, the Court appointed Mr. Sullivan to represent Isom. He entered his appearance on May 30, 2007.

On July 11, 2007, Isom testified on behalf of Mason during the Franks hearing. On July 12, 2007, based upon Isom's testimony, the government sought and received permission to file objections to the PSR out-of-time. On July 12, 2007, Isom moved to continue the sentencing date for an additional sixty days so that defense counsel could complete his investigation and review the PSR. The Court set sentencing for September 6, 2007.

On August 14, 2007, the probation Office issued a revised PSR.

On August 21, 2007, Isom moved to continue sentencing claiming that he may wish to, in his words, "shift its strategy" and withdraw his plea of guilty. The Court continued sentencing to December 7, 2007.

On November 20, 2007, Isom filed the instant motion to withdraw his guilty plea.

3. The Law Governing The Withdrawal Of A Guilty Plea

It is well-settled that "there is no absolute right to withdraw a guilty plea prior to sentencing." United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997). Rather, under Fed. R. Crim. P. 11(d), a defendant may withdraw a plea of guilty after the Court has accepted the guilty plea, but before sentence is imposed, only if the defendant can show a fair and just reason for requesting the withdrawal. Marrero-Rivera, 124 F.3d at 347; United States v. Isom, 85 F.3d 831, 834 (1st Cir. 1996). It is the defendant who bears the burden of persuasion, and that burden is a heavy one. Miranda-Gonzalez v. United States, 181 F.3d 164, 165 (1st Cir. 1999). See also, Marrero-Rivera, 124 F.3d at 347; Isom, 85 F.3d at 834.

In determining what is a "fair and just reason," the Court must weigh several factors, including: 1) whether any of the core concerns of Fed. R. Crim. P. 11 have been implicated, that is, whether the plea was voluntary, intelligent and knowing; 2) the force of the reasons offered by the defendant; 3) whether there is a serious claim of actual innocence; and 4) the timing of the motion. United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006). Some cases have also identified whether the parties had reached a plea agreement as an additional factor. Isom, 85 F.3d at 834. The First Circuit Court of Appeals has emphasized time and again that the voluntariness of the plea under Rule 11 is the most significant of these factors. United States v. Negron-Narvaez, 403 F.3d 33, 36 (1st Cir. 2005) (the "focus" is on Rule 11's core concerns); United States v. Rodriguez-Leon, 402 F.3d 17, 22 (1st Cir. 2005) (the "most significant" factor is whether the plea was knowing, voluntary and intelligent within the meaning of Rule 11); United States v. Richardson, 225 F.3d 46, 51 (1st Cir. 2000) (the "most significant" factor is whether the plea was

knowing, voluntary and intelligent); United States v. Muriel, 111 F.3d 975, 978 (1st Cir. 1997) (same); Isom, 85 F.3d at 834 (same).

Even if a defendant is able to "meet the strictures of this four-part test," the Court "still must evaluate the proposed plea withdrawal in relation to any demonstrable prejudice that will accrue to the government if the defendant is permitted to alter his stance." United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994).

As noted above, the "most significant" factor is whether the defendant's plea was voluntary, intelligent and knowing, within the meaning of Rule 11. A guilty plea meets this standard if, during the plea hearing, three "core" Rule 11 concerns are satisfied: "(1) voluntariness - i.e., absence of coercion; (2) understanding of the charge; and (3) knowledge of the consequences of the guilty plea." Marrero-Rivera, 124 F.3d at 348 & n.7. Accord, United States v. Castro-Gomez, 233 F.3d 684, 687 (1st Cir. 2000); Isom, 85 F.3d at 835.

4. The Application Of The Factors To The Facts

a) The core concerns of Rule 11

During the change of plea hearing on December 15, 2006,[3] the Court more than adequately addressed each of the core concerns of Rule 11.

The hearing started with a complaint by Isom concerning his counsel's representation. Isom stated:

> "Like, every time I, basically, addressed her or asked her for paperwork in the nature of my case, like I explained that *I'm ready to plea. I was ready to cooperate.* All's I wanted was some form of paperwork showing me that there was no fight on my case. There was nothing I could do other than take this plea. And I asked her for evidence on those grounds. I asked her for paperwork on those grounds.

[3] The transcript erroneously is dated December 15, 2007.

> I got my discovery the same day I got my plea agreement. There was seven days for me to make a choice. She got me more time to make a decision on my life based on the grounds that they were going to rewrite a plea. I got the plea another - - within seven days to take the second plea. . ." (Emphasis added). (T. 12/15/06, p.3)

During its colloquy with Isom, the Court stated:

> "Now before you answer that, I want to be clear. Nobody is making you plead guilty, and nobody's suggesting that you have an obligation to plead guilty. You have an absolute obligation to maintain your innocence and to plead not guilty and to go to trial. So let's just be absolutely clear about that." (T. 12/15/06, p.6).
>
> . . . . . . . . . . .
>
> Listen, you've signed this plea agreement, but you don't have to go forward with your plea. That's why we have a plea hearing. Okay? You don't have to go forward with it. You may have signed it a week after that meeting. You may have signed it at the beginning of December. You signed it on November 30th. All right? It's December 15th. You've had a full two weeks to read this and think about it further and so forth. And if your decision today is that you've changed your mind, then that's fine. You have that right.
>
> I mean you have the right to plead not guilty and go to trial. You have the right to plead guilty with this plea agreement, or you could tell me that you don't like this plea agreement, and you want to plead guilty without a plea agreement. That happens. And you can do it with a lawyer. You can do it without a lawyer. You can make a choice from any of those doors. All right? (T. 12/15/06, pp. 9-10).

Later, Isom stated: "Like I said your Honor, *I was always willing to plead, and I've always maintained my stance on the situation of cooperating and accepting responsibility.* I wanted to make sure my fight was over before I walked into this courtroom and just signed the papers after I felt as though my lawyer didn't do her job." (Emphasis added). (T. 12/15/06, p. 12).

Once again, the Court reviewed Isom's choices:

> Now, you've got a choice to make. I'll go through the choices with you again. You can plead guilty with this plea agreement. You can plead guilty without this plea agreement, tell me you don't want to agree to this stuff. We'll throw out the plea agreement. I'll take your plea without a plea agreement, or you can plead not guilty, and

we'll go to trial. (T. 12/15/06, p. 13).

The Court then made a determination that the Federal Defender protected Isom's rights and that he was fully informed. (T. 12/15/06, pp.16-17). The Court then asked Isom whether he wished to maintain his not guilty plea and proceed to trial. Isom responded: "No, your Honor. I'll plead guilty. I'll take the plea, and I'll just go do my time." (T. 12/15/06, p. 17).

Isom was then sworn under oath. (T.12/15/06, p. 18).

Isom agreed that he signed the plea agreement and wished to proceed with the change of plea under the terms of the plea agreement. (T. 12/15/06, pp. 20-21).

Isom admitted that he had received a copy of the indictment, read the indictment, and understood the nature of the charges against him. (T. 12/15/06, p. 20). The Assistant U. S. Attorney described the two charges against Isom. (T. 12/15/06, p. 24). The Assistant U. S. Attorney described the elements of each count, including the aiding and abetting theory, which the government would be required to prove if the case were to proceed to trial. (T.12/15/06, pp. 31-32). Isom acknowledged that he understood the elements of the two offenses. (T. 12/15/06, pp.36-37). The Assistant U. S. Attorney outlined the facts the government was prepared to prove if the matter proceeded to trial. (T. 12/15/06, pp. 32-35). Isom did not fully agree with the government's recitation, essentially advising the Court that he did not have knowledge of the quantity of drugs in the apartment. (T. 12/15/06, p. 38). However, during his exchange with the Court, he stated the following:

> "Well, basically, it was a little bit more than what was in the discovery, but it was, basically, the events of the situation, so yes, I think it was - - I think there was things that went a little overboard or didn't, I didn't agree with, but for the most part, she, basically, explained exactly what I was guilty of and my role in the situation. . . . Like I said, there's nothing that, like, sticks out. It's just, like, the car,, and me and Khalid Mason had

> driven in that car. You know, things, you know, minor things, like I said, for the most part everything's in place." (T. 12/15/06, p. 37).
>
> . . . . . . . . .
>
> ". . . What I'm agreeing to was there was a conspiracy, and I used to buy cocaine from Mr. Mason, and I used to resell that cocaine. And this is, basically, what my lawyer was explaining to me that the conspiracy showed that I was guilty of. That apartment was not my apartment. The quantity of drugs I had no knowledge of until I was charged with those drugs. I agree that the Government had, basically, made its case, and I was guilty of distributing them drugs, and I was in conspiracy and the aiding and abetting, I agree to it. I just - - I didn't have the knowledge that the quantity of drugs was there. That wasn't my knowledge. All's I knew was that I could get drugs from that residence at any given time, and I could make money off them." (T. 12/15/06, pp. 38-39).

When asked by the Court if there was anything else that he wished to point out was incorrect in the recitation of facts, Isom responded: "No, your Honor." (T.12/15/06, p. 39).

Isom further agreed that no promises had been made to induce him to sign the plea agreement or to plead guilty, that he had not been threatened to get him to sign the plea agreement or plead guilty, and that his decision to plead was completely voluntary. (T. 12/15/06, pp. 22-23).

The Court explained to Isom the consequences of pleading guilty. The Court advised Isom of the civil rights he would lose by pleading guilty. (T. 12/15/06, p. 23). The Court had the Assistant U. S. Attorney recite the minimum mandatory and maximum penalties, both for the individual counts and consecutively. Isom not only indicated that he listened to the Assistant U. S. Attorney, but that he had also read the penalties. (T. 12/15/06, pp. 23-25). When it appeared that Isom believed the mandatory minimum term of imprisonment might only be advisory, the Court undertook steps to ensure that Isom understood the difference between a guidelines sentence and statutory, mandatory minimum penalties. (T. 12/15/06, pp. 25-28). The Court

advised Isom of the trial rights and appeal rights he would be giving up by pleading guilty. (T. 12/15/06, pp. 29-31).

The Court found that Isom was aware of the charges against him, that he was aware of the consequences of his plea, and that his plea was knowing and voluntary. (T. 12/15/06, p.39).

The core concerns of Rule 11 were fully satisfied by the Court. The Court's determinations that the plea was without coercion, that Isom understood the charges, and that Isom understood the consequences of pleading guilty are well-founded in the record. Isom does not show otherwise. Isom completely fails to meet his burden.

b) The force of reasons offered by the defendant

Other than allegations of late discovery and the testimony and conduct of Sergeant Partridge, Isom offers no reasons why his motion should be granted. As more fully explained below, his proffered reasons do not rise to the level justifying the withdrawal of his guilty plea. There was no obligation on the government to provide the so-called "late discovery" materials. Isom does not point to any documents or information in these materials containing exculpatory information. Isom does not explain how and why earlier receipt of these materials would have affected his decision to plead guilty. Further, Isom does not explain how the presence of certain case-related materials in the home of Sergeant Partridge deprived Isom of due process. "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." Brady v. United States, 397 U. S. 742, 756 (1970).

Isom again fails to meet his burden.

c) A serious claim of actual innocence

In the memorandum supporting Isom's motion to withdraw his plea of guilty, Isom's counsel states, "Mr. Isom professes his innocence herein and maintains it on an ongoing basis." Defendant's Memorandum, p.5. On page 7 of the same Memorandum he states, "Mr. Isom's claims of actual innocence are 'emphatic.'"

These statements contrast sharply with Isom's statements at the change of plea hearing made under oath. No where in the plea colloquy does Isom state he is innocent. Quite the contrary, he admitted he was guilty and concurred with the factual summary given by the Assistant U. S. Attorney, using phrases such as: "I think there was things that went a little overboard or didn't - - I didn't agree with, but for the most part, she basically, explained exactly what I was guilty of and my role in the situation." (T 12/15/06, p. 37); "I agree that the government had, basically, made its case, and I was guilty of distributing them drugs, and I was in conspiracy and the aiding and abetting. I agree to it." (T. 12/15/06, p. 38); "All's I knew was that I could get drugs from that residence at any given time, and I could make money off them." (T.12/15/06, pp. 38-39); and "Guilty." (T. 12/15/06, p. 39). Further, it is important to note that these are not merely "yes" and "no" answers responding to detailed questions by the Court. These are Isom's own words.

Further, in his acceptance of responsibility letter, Isom makes no claim of innocence. Rather, he admits that on January 16, 2004, he conspired with Mason to possess cocaine base with the intent to distribute it.

Further, during a debriefing of Isom on February 23, 2007 and March 2, 2007 conducted by Detectives Enright, Colanduono and Conley, and done in the presence of Isom's counsel and

the Assistant U. S. Attorney, Isom did not proclaim his innocence. Rather he told those present that several days prior to the execution of the search warrant he received three kilograms of cocaine; that he gave one of these kilograms of cocaine to Mason; that he sold powder cocaine to Mason who would in turn provide Isom with crack cocaine whenever Isom needed it; and that one or two days prior to the search he went to Mason's apartment to pick up an ounce of crack cocaine, but left without it because he did not like the quality.

Further, Isom's present claims of actual innocence are inconsistent with testimony given by him as a witness for his childhood friend, co-defendant and co-conspirator, Khalid Mason. At one point, in response to questions by Mason's attorney, Isom stated:

Q. So you admit that you got drugs off of Khalid Mason and then sold them on the street?

A. At times.

Q. How many times, Mr. Isom?

A. I can't remember.

(T. 7/11/07, p. 45). A few minutes later, Isom stated:

Q. Mr. Isom, do you remember telling Detective Enright and Sergeant Zuena about the note box on the porch at 214 Pavilion?

A. Yeah. There was bags. There wasn't a note box. What did you just say?

Q. A box on the porch. Do you remember telling Detective Enright and Sergeant Zuena about a box on the porch at 214 Pavilion?

A. Yeah.

Q. And do you remember telling these two detectives that there was always balls

in there, three grams?

A. I said there could be anything in there. Like, if I wanted a small quantity of material, I knew where to get it from outside the house. That's what I told them.

Q. If you wanted a small quantity of crack cocaine, you knew you could get it at 214 Pavilion, right?

A. Yeah. That's what I told him.

(T. 7/11/07, pp. 46-47).

Finally, Isom's claim of actual innocence rings hollow. In the exercise of its common sense, this Court could reasonably conclude that Isom pleaded guilty because under the law he was guilty. He sought to make the best deal he could. He had already informed law enforcement officers of Mason's drug trafficking activities. After Isom pleaded guilty and was facing a minimum sentence of twenty years, Mason's Franks motion gave Isom an opportunity to redeem himself with Mason, in others words, to be a "stand-up guy." He testified for Mason, sought to twist previously made statements to his own advantage, denied making other statements, and piled blame for pleading guilty on his previous counsel. When good fortune found Mason and the government dismissed his indictment, Isom found himself to be the "last man standing" - alone facing at least twenty years imprisonment. It was only then that Isom acted to withdraw his guilty plea - not because he is innocent, but because he alone bears the weight.

Isom does not carry his burden on this factor.

d) The timing of the motion

Isom's motion comes too late. Isom's motion to withdraw his plea of guilty comes more than *eleven months* after he entered his guilty plea. Even if the Court looks to Isom's August 21,

2007 motion to continue sentencing on grounds that he *may* wish to withdraw his guilty plea, that motion came more than *eight months* after the entry of his guilty plea.

With respect to the timing of a motion to withdraw a guilty plea, the First Circuit in United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992), stated the following:

> Because the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses. (Citations omitted). Put another way, excessive delay saps strength from any proffered reason for withdrawal.

See, Souza, 468 F.3d at 46-47 (five month delay between the entry of the plea of guilty and the motion to withdraw the plea was too long); Rodriguez-Leon, 402 F.3d at 26 (two month delay not favor the defendant); United States v. Pagan-Ortega, 372 F.3d 22, 31 (1st Cir. 2004) ("The two month lag between the plea hearing and appellant's motion to withdraw places it well within the area of vulnerability because of untimeliness."); United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000) (5-6 month delay weighs against plea withdrawal); Marrero-Rivera, 124 F.3d at 353 (14 weeks too long); Muriel, 111 F.3d at 980 (almost three month delay weighs against withdrawal); Isom, 85 F.3d at 839 (two months too long); United States v. Gonzalez-Vazquez, 34 F.3d 19, 23 (1st Cir. 1994) (four month delay too long); United States v. Laliberte, 25 F.3d 10, 15 (1st Cir. 1994) (five month delay weighs against withdrawal); Parrilla-Tirado, 22 F.3d at 373 (six month delay weighs against withdrawal); Doyle, 981 F.2d at 595 (seven month delay too long); United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987) (two week delay weighed against withdrawal); and United States v. Crosby, 714 F.2d 185, 191 (1st Cir. 1983) (eight week delay too long).

Isom fails to meet this factor.

5. Isom's Grounds

a) The allegation that the government failed to comply with its discovery obligations

Isom complains that the "surveillance reports, notes, BCI records, *inter alia*" produced by Sergeant Scott Partridge on or about August 14, 2007, as well as the production of grand jury transcripts of Detectives Enright and Colanduono on or about August 23, 2007, were provided long after he entered his guilty plea. He elaborates no further and leaves this Court and the government to speculate as to how this claim supports his motion.

The government not only fully complied with its discovery obligations, but provided Isom with a voluminous amount of material over and above its discovery obligations at least three weeks prior to Isom *signing* the plea agreement.

In sum, Rule 16 of the Federal Rules of Criminal Procedure and this Court's Arraignment And Pretrial Discovery Order obligates the government to provided the following upon request by the defendant:

- certain oral statements of the defendant;
- written and recorded statements of the defendant;
- the defendant's criminal record;
- the inspection and copying of tangible evidence;
- reports of tests and examinations;
- summaries of expert testimony;
- exculpatory information; and
- whether wire or oral communications were intercepted.

By discovery letter to the Federal Defender dated October 23, 2006, the government provided the following:

- a disc containing a recorded statement of the defendant;
- Isom's criminal history;

- a statement that tangible evidence was available for inspection;
- the drug analysis report;
- the identity of the chemist and of police opinion witnesses;
- a statement by the landlady for 214 Pavillion Avenue (1 pg.);
- a police narrative (3 pgs.);
- an offense report (7 pgs.);
- a statement of Det. Peter Conley (1 pg.);
- a seizure report of Det. Peter Conley (1 pg.);
- a statement of Sgt. Scott Partridge (2 pgs.);
- a statement of Sgt. Scott Partridge reflecting post-arrest admissions made by Isom (1 pg.);
- a statement of Det. Andrew Lawton (1 pg.);
- a seizure report of Det. Andrew Lawton (1 pg.);
- a statement of Det. Nicholas Ludovici (1 pg.);
- a seizure report of Det. Nicholas Ludovici (1 pg.);
- a statement of Det. Robert Enright (1 pg.);
- a seizure report of Det. Robert Enright (1 pg.);
- a statement of Det. Joseph Colanduono (1 pg.);
- a seizure report of Det. Joseph Colanduono (1 pg.);
- a statement of Det. Anthony Hampton (1 pg.);
- a seizure report of Det. Anthony Hampton (1 pg.);
- a statement of Det. John Whalen reflecting post-arrest admissions made by Isom (1 pg.);
- a statement of Sgt. Alfred Zonfrilli (1 pg.);
- Property Invoice Receipts (2 pgs.);
- a Pawtucket Police Department Incident Report (3 pgs.);
- a Seekonk Police Department arrest report and witness statement (3 pgs.);
- a Massachusetts accident report (2 pgs.);
- Isom Advice of Rights form(1pg.);
- a post-arrest interview report of admissions made by Isom to Det. Sgt. Vincent Mansolillo (1 pg.); and
- search warrants and supporting papers for 214 Pavillion Avenue, Providence, and 85 Dunnell Street, Pawtucket (10 pgs.).

By a further discovery letter to the Federal Defender dated November 8, 2006, the government also provided DEA-6 reports of Detectives Enright and Colanduono (5 pgs.) detailing post-arrest statements of Isom and Mason and a disc containing a recorded interview of Mason.

Isom had all of the above-described evidence in his hands and available anywhere from five to seven weeks prior to his entering a plea of guilty. By the time he pled guilty, Isom was

well-versed in the nature and strength of the government's evidence against him. There is no question that he pled guilty with his eyes wide open.

Further, the materials which Isom complains he did not receive until after he entered the guilty plea and are the cornerstone of his argument - the surveillance reports, notes, grand jury transcripts - are not discovery materials at all. He mis-characterizes them as such. The production of these items is not covered by Rule 16. Rather, they are witness statements which, under Fed. R. Crim. P. 26.2, need not be produced until after the witness has testified on direct examination.

Further, Fed. R. Crim. P. 16(3) specifically exempts the production of grand jury transcripts from the discovery process except under circumstances not applicable to the present status of Isom's case.

Further, Isom does not even allege that the surveillance reports, notes, grand jury transcripts, and other materials received by him in August 2007 contain exculpatory information or that the failure to disclose the information influenced his decision to plead guilty. Even if, in the context of a guilty plea, Isom had a constitutional right to receive exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963) before pleading guilty, the burden is Isom's to demonstrate that the timing of the production of these materials prejudiced him in some way. In other words, he must show that he would not have entered a guilty plea had he known of the exculpatory information. See e.g., Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006) (the defendant must show that some egregiously impermissible conduct antedated the entry of his plea, and the misconduct influenced his decision to plead guilty).

At day's end, Isom decided to plead guilty because he was guilty, in order to avoid a

potentially greater term of imprisonment, and based upon his assessment of the strength of the government's case against him, including his admissions to Detective Sergeant Mansolillo and Detectives Marsland, Sweeney and Finegan on January 16, 2004[4], his admissions to Detectives Whalen and Partridge on January 20, 2004[5], and his recorded admissions to Detectives Enright and Zuena on October 7, 2006[6]. Isom cannot show that earlier possession of the August 2007 materials would have effected his decision-making process.

b) <u>The allegation that the new evidence did not allow Isom to enter a plea of guilty knowingly, voluntarily and intelligently</u>

Isom argues that the August 2007 materials prevented him from entering a guilty plea knowingly, voluntarily and intelligently because "[i]f a defendant hasn't all the information in possession of the government, then his plea is made without the requisite state of mind to enter

---

[4] "Isom stated that his prints would be on the suspected drugs. He stated that a number of people deal drugs from that house and that indeed he had dealt drugs from that location himself. He reiterated that even though his fingerprints were on the drugs the drugs did not belong to him. When asked who they belonged to he respectfully declined to answer." Quoting, in part, from Sergeant Mansolillo's report.

[5] "Isom was asked if any of the cocaine seized from 214 Pavilion Avenue, 3rd floor apartment were his? Isom replied that some of it belonged to him, not much, that most of it belonged to Khalid (Mason). Isom stated that his prints would be on a few of the bags, around a 100 grams or less. Detective Partridge asked Isom how much weight he dealt with? Isom stated that he and Khalid do about 500 grams every other day. Detective Partridge asked if Isom if they cooked the cocaine? Isom stated that he and Khalid would do it." Quoting, in part, from Detective Whalen's report.

[6] "Detective Enright: So, him giving it to you is just the same, kind of, as him going to give it to the guy you're giving it to because he knows you ain't using it. You're selling it. Am I right?

Isom: Yeah. So, so, in turn, I get charged for all of this shit because of, just because of me going there to buy something from him?

Detective Enright: You were going there a lot. You were.

Isom: Yeah, but I'm saying, drug dealers, drug dealers deal with each other a lot because,–." Quoted from page 120 of the transcript.

into a plea that is knowing, intelligent or certainly voluntary as required by Rule 11." Defendant's Memorandum, p.4. Isom then proceeds to cite a specific passage from the transcript of his Franks hearing testimony and states he "professes his innocence herein and maintains it on an ongoing basis." Defendant's Memorandum, p.5.

To the extent that Isom's argument alludes to some or all of the factors identified by the First Circuit which this Court should consider in deciding whether to allow a defendant to withdraw his plea of guilty, the government has fully addressed those factors above.

With respect to his claim that a defendant must have all information in possession of the government before his plea of guilty can be deemed knowing, voluntary and intelligent, he cites no case which supports that view. In fact, the law is to the contrary. As previously noted, for a guilty plea to be voluntary, intelligent and knowing within the meaning of Rule 11, the plea must at least satisfy the three "core" concerns of Rule 11: (1) voluntariness - i.e., absence of coercion; (2) understanding of the charge; and (3) knowledge of the consequences of the guilty plea. Marrero-Rivera, 124 F.3d at 348 & n.7. The First Circuit has not proclaimed any "bright-line" rule that the defendant have all information in possession of the government before his plea can be considered knowing, voluntary and intelligent. Any claim to the contrary flies in the face of Ferrara and the case law of other circuits. See e.g., Campbell v. Marshall, 769 F2d 314 (6th Cir. 1985) (though one murder victim had a gun in his pocket, and that fact was not disclosed to defendant before he entered a plea of guilty to two counts of murder, the Court of Appeals affirmed the District Court's denial of defendant's motion to withdraw his guilty plea wherein he alleged that his due process rights under the Fourteenth Amendment were violated). Further, as previously noted, Isom does not identify what exculpatory information and facts are contained in

the August 2007 materials, nor does he explain how they would have affected his decision to plead guilty. In sum Isom cannot assert that lack of knowledge rendered his plea involuntary as he makes no claim that any of the August 2007 information was exculpatory.

c. The conduct of Sergeant Partridge was outrageous and deprived Isom of his due process rights

Isom argues that the Franks hearing testimony of Sergeant Partridge and the storage of certain documents at his home are "astonishing." He states "His sworn testimony is all that is currently available to put Mr. Isom in Jail for the remainder of his life."

Unfortunately for Isom, the characterization of Sergeant Partridge's testimony and/or conduct as "astonishing" does not satisfy the significant burden he must carry to vacate a plea of guilty. Isom does not address how the testimony and conduct of Sergeant Partridge fits within the factors the Court must analyze in determining whether to grant a motion to withdraw a guilty plea. And again, it is up to Isom to explain how the storage of *inculpatory* material at Partridge's home affected his decision to plead guilty and his due process rights. Further, the government does not agree with Isom's generous assessment that the Isom prosecution rises and falls on the shoulders of Sergeant Partridge. In the materials attached to the discovery letters, at least a dozen other police officers are identified who can provide relevant evidence in this case, including Detectives Mansolillo Marsland, Sweeney, Finegan, Whalen, Enright and Zuena who could testify to admissions made by Isom.

6. Conclusion

For all of the reasons above, the motion to withdraw the guilty plea should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
kenneth.madden@usdoj.gov
R. I. Bar # 1680

Michael Beagan
Law Student

CERTIFICATION

I hereby certify that on the 7th day of December, 2007, I electronically filed and served the Within Government's Memorandum In Support Of Its Objection To Defendant's Motion To Withdraw Plea Of Guilty And Vacate Sentencing Date to:

Patrick J. Sullivan, Esq.
Law Offices
505 Tiogue Avenue, Suite 3
Coventry, RI 02816

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
kenneth.madden@usdoj.gov
R. I. Bar # 1680